BENJAMIN SUMNER, Reviewer,
*against*
MARTHA WENTWORTH, Reviewee.

</div>

<div style="margin-left:2em">

*The deed of a feme covert executed jointly with her baron must be acknowledged conformably with the statute of this State, or certified agreeably to the laws of the country where it is executed; and if not, the covenants in such deed are not binding on the feme after the decease of her baron.*

</div>

COVENANT broken. Attach *Martha Wentworth*, of *Portsmouth*, County of *Rockingham* and State of *New-Hampshire*, to answer unto *Benjamin Sumner*, of *Clairmont*, in the County of *Cheshire* and same State, in a plea of covenant broken, wherein the said *Benjamin* declares, that at *Portsmouth* aforesaid, on the first day of *October*, 1781, the said *Martha*, together with *Michael Wentworth*, then of said *Portsmouth*, since deceased, the then

lawful wedded husband of the said *Martha*, by their
certain deed, commonly called a deed-poll, in writing
under the hands and seals of them the said *Michael*
and *Martha*, by them well executed and authenti-
cated according to law, bearing date the day and year
last aforesaid, for and in consideration of the sum of
one hundred and forty pounds, the then current mo-
ney of the State of *New-Hampshire*, equal to 466
dols. 67 cts. of the current money of the *United
States*, paid to them the said *Michael* and *Martha*,
did, in the life-time of the said *Michael*, and while
the said *Martha* was a *feme covert*, and the lawful
wife of the said *Michael*, in the right of her the said
*Martha*, grant, bargain, sell, aliene, release, convey
and confirm unto the said *Benjamin Sumner*, his heirs
and assigns, to have and to hold in fee-simple a cer-
tain tract or parcel of land in *New-Haven*, in the
County of *Addison* and State of *Vermont*, containing
five hundred acres, being the same land severed, laid
out, and reserved to the right of the late Governor of
*New-Hampshire*, *Benning Wentworth*, Esquire, de-
ceased, as original grantee in said township ; which
land now lies in the City of *Vergennes*, in said
County of *Addison*. And for that the said *Martha*,
in and by said deed, covenanted to and with the said
*Benjamin Sumner* to warrant and defend the said
granted and bargained premises against all claims of
any person claiming, meaning and intending claiming
the said premises, by, from or under them the said
*Michael* and *Martha*, or the said *Benning Went-
worth*. And now the said *Benjamin Sumner* in fact
saith, that since the execution and delivery of said
deed, he hath been ousted, ejected, and expelled
from the said granted premises by a person claiming

<div align="right">
Sumner<br>
v.<br>
Wentworth.
</div>

the said granted premises by, from and under the said *Benning Wentworth*. Wherefore the said *Martha* hath not kept her said covenant, although often thereunto requested, but hath altogether broken the same, *ad damnum*, 10,000 dollars.

This action was originally entered at the County Court, *Addison* County, *September* term, A. D. 1797, and was continued, by agreement of parties, to *March* term, A. D. 1798; when

*S. Miller*, for the defendant, moved the Court, that the defendant might remove the suit for trial into the Circuit Court of the *United States*, to be holden at *Windsor*, within and for the District of *Vermont*, on the first *Monday* of *May*, A. D. 1798, according to the statute law of the *United States*, entitled, " An act to establish the Judicial Courts of the *United States*;" and offered bail, &c. pursuant to such statute. Whereupon the County Court decided, that the defendant take nothing by her motion.

Laws of *U. S.* vol. 11. p. 56.

And now the said *Martha*, in said County Court, by *S. Miller*, her attorney, comes and defends, &c. and pleads and craves *oyer* of the deed declared upon, which is read to her in the words and figures following, to wit:

Know all men by these presents, That we, *Michael Wentworth*, of *Portsmouth*, County of *Rockingham* and State of *New-Hampshire*, Esquire, and *Martha* his wife, in her right, for and in consideration of one hundred and forty pounds to us in hand paid before the delivery hereof, by *Benjamin Sumner*, of *Clair-*

*mont*, in the County of *Cheshire*, gentleman, the receipt whereof we do hereby acknowledge, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release, aliene, convey and confirm to him the said *Benjamin Sumner*, his heirs and assigns for ever, a tract of land in *New-Haven*, in the State of *Vermont*, containing five hundred acres, being the same land laid out to the right of the late Governor *Benning Wentworth*, Esquire, deceased, as original grantee in said township, in the County of *Rutland*.* To have and to hold the said granted and bargained premises, with the appurtenances thereof, to him the said *Benjamin Sumner*, his heirs and assigns, to his and their proper use, benefit and behoof for ever, hereby engaging to warrant and defend the said granted premises against all claims and demands of any person or persons claiming from, by or under us or the said *Benning Wentworth*.

In witness whereof we have hereunto set our hands and seals this first day of *October*, A. D. 1781.

<div align="center">

*Michael Wentworth.*     (L. s.)

*Martha Wentworth.*     (L. s.)

</div>

Signed, sealed and delivered
  in presence of

    *George Gains.*
    *John Gilmore.*

---

* At the time of the execution of this deed, the township of *New-Haven* was within the jurisdiction of *Rutland* County.

# ADDISON COUNTY,

State of *New-Hampshire.*

*Rockingham,* ss. *Portsmouth, December* 9th, 1784. Then *Michael Wentworth* and *Martha Wentworth* his wife personally appeared before me, and acknowledged the above instrument by them subscribed to, as their free act and deed.

*George Gain,* Just. Pacis.

Which said deed being read and heard, she the said *Martha* the defendant pleads and says, that the plaintiff's declaration and matters therein contained, are not sufficient in law for the said *Benjamin Sumner* to have and maintain his said action thereof against her the said *Martha,* and that she hath no need, nor is she bound by the law of the land in any manner to answer the same, and this she is ready to verify. Wherefore, for want of a sufficient declaration in this behalf, the said *Martha* prays judgment if the said *Benjamin* ought to have and maintain his action thereof against her, and that she may have her costs.

By *Miller.*

And the said *Benjamin Sumner* saith, that the said declaration, and the matters therein contained, in manner and form as the same are above stated and set forth, as founded and counted upon the deed here exhibited in *oyer,* are sufficient in law for him the said *Benjamin* to have and maintain his aforesaid action against her the said *Martha.* Which said declaration, and the matters therein contained, in matter and form as the same are above stated and set forth, he the said *Benjamin Sumner* is ready to verify and prove, as the Court here shall direct and award.

Wherefore, inasmuch as the said *Martha Wentworth* hath not denied the said declaration, nor hitherto in any manner answered the same, or the matters therein contained, he the said *Benjamin* prays judgment, and the damages by him sustained on occasion of the breach of the covenant in said declaration mentioned, to be adjudged to him, and for his costs.

<div align="right">Sumner<br>v.<br>Wentworth.</div>

<div align="center">By <em>Darius</em> and <em>Daniel Chipman</em>,<br>and <em>A. Marsh</em>.</div>

The County Court continued the cause to advise; and at their *April* adjourned term, A. D. 1798, adjudged, that the declaration is sufficient, and that plaintiff recover of defendant 929 dols. 78 cts. damages, and his costs.

From this judgment plaintiff appealed to the Supreme Court.

At the Supreme Court, after imparlance, the defendant *Martha Wentworth* filed the following plea and notice:

<div align="center"><em>Addison</em> County, Supreme Court of Judicature, <em>January</em> term, A. D. 1800.</div>

*Benjamin Sumner*, appellee,
<div align="center">v.</div>
*Martha Wentworth*, appellant.

Take notice, that the counsel for *Martha Wentworth*, in the cause of *Benjamin Sumner* against her now pending in this Court, will, by leave of Court

Sumner
v.
Wentworth.

first had and obtained, waive their former pleas in said cause, and shall rely on the following, and the notice thereto subjoined.

<div style="text-align:right">Miller and C. Smith.</div>

To Daniel Chipman et al.
Counsel for Benjamin Sumner.

And now the said Martha Wentworth comes and defends the force and injury when, &c. and says, that the said deed-poll in the said declaration mentioned, is not her deed, and of this she puts herself on the country, by

<div style="text-align:right">Miller and C. Smith.</div>

And the plaintiff likewise, by

<div style="text-align:right">Daniel Chipman, A. Marsh, and<br>Squires.</div>

The counsel for the said Benjamin Sumner will take notice, that the counsel for the said Martha Wentworth, in the above action, under the issue aforesaid, agreeably to the statute in such case made and provided, will give in evidence,

Vermont Stat.
vol. 1. p. 95.
s. 98.

1st. That at Portsmouth aforesaid, to wit, at Middlebury, in the County of Addison, on the fourteenth day of November, A. D. 1785, the said Michael Wentworth conveyed in fee to the said Benjamin Sumner two other original rights or shares of land, one being in the township of Middlebury aforesaid, of which land the said Benning Wentworth was original proprietor, in full satisfaction of all demands he the said Benjamin had or might have, in and by virtue of the deed read to her on oyer as aforesaid, and the said Benjamin then and there received the

said conveyances in full satisfaction of all demands he the said *Benjamin* had or might have in and by virtue of said deed, upon which said *Benjamin* hath declared.

2dly. That the said *Benjamin Sumner*, in the year 1785, had knowledge that the said *Benning Went-worth*, in his life-time, had conveyed his original right of land in *New-Haven*, since in the City of *Ver-gennes* aforesaid, to some other person; that the said *Michael Wentworth* died in the year 1796, and was, from his intermarriage with the said *Martha* to the time of his death, a man possessed of a large estate.

3dly. That the *ouster*, eviction and expulsion, in the said declaration mentioned, was by the said *Ben-jamin* by fraud and covin obtained.* By

*Miller* and *C. Smith.*

The above issue was put to the country. And now,

---

* Section 98. of the act constituting the Supreme Court of Judicature, &c. provides, " That the general issue of not guilty, *nil debet*, or any other general plea proper to the action, whereby the whole declaration is put upon proof, according to the nature of the case, may be made by the defendant, under which general plea the defendant shall have liberty, upon the trial of the cause, on such general issues, to give any special matters in evidence in his defence or justification, as the nature of the action may be; the defendant giving notice in writing, with the plea of the special matter or matters on which he or she shall rely in such defence in justification. And no special matter shall be given or allowed in evidence, except such as shall be particularly mentioned in such notice or writing as aforesaid." This statute provision was undoubtedly

*Sumner*
*v.*
*Wentworth.*

*Vermont Stat.*
vol. 1. p. 95.

*Daniel Chipman*, for appellee, offered in evidence the deed read on *oyer*.

*S. Miller* objected, on the part of the defendant, that although the deed purported that it was signed by the defendant, yet as she was a *feme covert* at the time of the execution of it, she had no ability to convey, and the deed and the covenant of it, as it respects her, are null and void.

To shew that this is the proper mode of making such objection, that coverture may be given in evidence under *non est factum*, he cited *Morgan's Essays*, p. 302. and *Capel Loft's Gilbert's Law of Evidence*, p. 319. After observing generally upon the legal disabilities of a *feme covert*,

To shew that the deed of a *feme covert* is void, he cited *Com. Dig.* vol. 2. p. 1023. s. 1. *Bl. Com.* vol.

---

intended to accelerate judicial proceedings by abbreviating the forms of common law pleadings; but it is to be lamented that it has not hitherto produced that desirable effect. In such notices under general issues, much extraneous and impertinent matter has been introduced, to the discredit of the records. And as such notices could not be considered as distinct from the general issue, they could not be reached by formal demurrer on the record: But the Supreme Court have ever allowed the adverse party to exclude such extraneous and impertinent matter by parol demurrer to the evidence when offered to the Jury. This provokes debate, consumes time, and occasions that delay which the Legislature intended to prevent. It may, however, be considered as settled, that the special matter of a notice under the general issue, cannot be proved to a Jury, unless it will amount to a bar of the right of action.

REPORTER.

1. p. 444. Ib. vol. 2. p. 292. " The case of a *feme* covert is somewhat different. She may *purchase* an estate without the consent of her husband, and the conveyance is good during the coverture till he avoids it by some act declaring his dissent; and though he does nothing to avoid it, or even if he actually consents, the *feme covert* herself may, after the death of her husband, waive or disagree to the same ; nay even her heirs may waive it after her if she dies before her husband, or if in her widowhood she does nothing to express her consent or agreement. But the *conveyance*, or other contract of a *feme covert*, (except by some matter of record,) is absolutely *void*, and not merely *voidable*, and therefore cannot be affirmed or made good by any subsequent agreement."

To shew the distinction between that which is *void* or merely voidable, he cited *Doug. Rep.* p. 52. *Butcher* v. *Simpson*. 1 *Powell*, p. 74. *Cowp.* p. 201. *Goodright's Ex'or* v. *Shapland.* *Loft's Rep.* 765, same case.

He then adverted to the statute of the State ;

" That no real estate, of which any *feme covert* is or shall be seised, shall henceforth pass by deed of herself and *baron*, without a previous acknowledgment, made by her separately from her husband, before a Judge of the Supreme Court, or a Judge of the County Court, or some Justice of the Peace of the County in which such married woman shall live, or the land so to be conveyed does lie, that she executed such deed freely, and without any fear or compulsion of her husband ; a certificate of which acknowledgment, taken as aforesaid, shall be indorsed on the deed by the Judge taking the same, and recorded at

*Sumner* v. *Wentworth.*

*Vermont Stat.* vol. 1. p. 195. s. 12.

large with the deed; and every alienation of such estates not acknowledged and recorded as aforesaid, is hereby declared to be utterly void."

The object of this act is to be highly approbated. It is to secure the rights and interest of that estimable sex, who merit the primary protection of the Legislature, even the oppressed part of the sex, who possessing real estate in their own right might be compelled to sacrifice it to the menaces of a brutal or spendthrift husband; and the Court, we presume, will be careful to see that it is construed liberally in their favour.

The deed in question is not acknowledged conformably to the act, and we have seen that it is not merely *voidable*, but void at common law. If the deed is *void*, the covenants cannot bind. It would be a monstrous doctrine, that the Legislature should protect the *feme covert* from the oppression of an overbearing husband, by rendering her deed executed and acknowledged under this conjugal duress void, and yet leave her exposed *durante viduitate* to the obligations of the covenant made under the same duress.

Daniel Chipman, *e contra*, stated the nature of the action, admitted that coverture may be given in evidence under the general issue of *non est factum*, and also, for this argument, that if the deed be void, the covenants are also void; but he contended, that the deed is sufficient to pass the fee under our own statute, and read sect. 13. of the act regulating conveyances, &c. " that all deeds and other conveyances, the acknowledgment or proof of which shall have been or hereafter shall be taken without this State,

if certified agreeably to the laws of the state, pro-   Sumner
vince or kingdom in which it was taken, such ac-   Wentworth.
knowledgment or proof shall be as valid as though   *Vermont* Stat.
the same were taken before some proper officer or   vol. 1. p. 195.
Court within this State."

He then read a statute of the State of *New-Hamp-*   Stat. *N. H.* p.
*shire*, where the deed in question was executed and   19.
acknowledged, passed in the year 1780; and insisted,
that the deed was executed and acknowledged agree-
ably to this act, and therefore valid to pass the fee,
and the covenants were therefore binding.

*Hitchcock*, for the defendant. The statute of *New-
Hampshire* does not enable a *feme covert* to convey
real estate, but supposes a person authorised to con-
vey by common law. Besides, the proviso in that
act restricts the right to convey, but in regulation of
dower, and therefore can have no operation on this
deed. The deed must therefore be considered as
void; and if so, it is confessed the covenants are like-
wise void.

*Curia advisare vult.* In the afternoon sittings,

The Court decided, that the deed should not be
read to the Jury.

'Verdict for defendant by consent, and motion in
arrest and for new trial, for that the Court had ex-
cluded in evidence the deed declared upon, con-
trary, &c.

And now, at the adjourned term of the Court, *June*, A. D. 1800, the motion in arrest of judgment was argued.

*Daniel Chipman*, for the motion.   We shall now contend,

1st.  That the deed in question is valid;  and

2dly.  If not valid to pass the land,  the covenants are binding on the defendant.

Originally  no  freehold  could  pass without *livery of seisin*.  This was found inconvenient in the country of our ancestors, and, among a variety of modes contrived  by  the  subtlety of conveyancers to avoid this inconvenience,  that of a *fine*  was  introduced, which is defined to be  " an agreement of the parties on record, by which lands are transferred from conusor to conusee,  with or without a render;  and this is esteemed  a  conveyance  of greater security than a feoffment,  or the  investiture  by  livery [of seisin;] but having the constant and undoubted credit of a Court to protect and support it,  and this further convenience and security,  that it does not  only  transfer the right of the vendor and all claiming under him, but likewise extinguishes the right of others, who omit  to  make  their claim in due time. *Bac. Abr.* vol. 3. p. 189.   Our *English* ancestors, by bringing the transfer of land upon the records of their Courts of Justice, by a fictitious suit at law avoided the livery of seisin.   We have adopted a more manly mode to avoid the inconvenience of livery.   We have abolished the feoffment by livery,  established certain offices, where our deeds being recorded, after being conformed to certain prerequisites,  shall pass  the

land. The object of the *English fine* is to give the same or greater notoriety to the transfer than was intended by livery of seisin. The object of our records is the same. The *English* doctrine of fines and recoveries ought therefore to apply to the construction of our statute regulating the conveyance of real estate.

We find under the *English* doctrine of fines and recoveries, sufficient to cover our whole case:

That a *feme covert* may levy a fine with her husband upon lands held in her own right.

That if *baron* and *feme*, by fine *sur concessit*, grant land for 99 years, and warrant the said land during the term, and *baron* dies, and the grantee is evicted by one who hath a prior title, he may thereupon *bring covenant against the feme*, notwithstanding she was covert at the time when the fine was levied. *Bac. Abr.* vol. 1. p. 496.

Mr. *Chipman* then went more largely into the consideration of the statute of *New-Hampshire*, and insisted that the deed was executed and acknowledged within the purview of that act; as in the trial *per pais*.

*Hitchcock, e contra.* Our opponents have endeavoured to shew the analogy between our statute regulating the conveyance of real estate, and the *English* fine and recovery. They unfortunately have omitted one very striking resemblance. Under our statute a *feme covert* cannot convey her inheritance without a private examination by a magistrate; and the *English* authorities inform us, that if husband and wife join in a fine to convey her own inheritance, it ought to be received, if *upon her examination* it ap-

pears to be voluntary and free from restraint; for where she is to convey or pass any estate or interest either by herself or jointly with her husband, there she ought *to be examined.* 2 *Inst.* 515. And it is worthy observation, that the very reason given in the books why a *feme covert* cannot bargain and sell her lands alone, or with her husband by deed indented and enrolled is, that she cannot (in such case) be *Bac. Abr.* vol. 1. *examined* by any Court without writ, and there is no p. 497. writ allowed in such case, as in case of fines.

But it is said, if the land did not pass by this deed, still we are holden by the covenants. If the land did not pass, what did the joinder of the *feme covert* in the deed amount to? Could it to any thing more than the signification of her consent to her *baron's* act? Was not the act his own and the covenants his own. Should not the action have been brought against his legal representatives? A case is cited where baron and *feme* grant land by fine *sur concessit.* In such case it is certain, although not stated, that the feme *passed examination.* But if she did not, what is the nature of a fine *sur concessit?* Is it to pass land *Bl. Com.* vol. 2. in fee? Judge *Blackstone* says it is to pass land for p. 353. life or years. Does it touch the grant in the present case?

Would it be equitable, that the purchase-money of the estate sold as in the present case, should merge, if we may borrow a term from the realty, in the husband's personal estate, which may be expended, or if not, of which the widow can have only her thirds, when not debarred by jointure or will, and she be exposed to judgment in damages for the whole breach of the covenants, which might sweep

her whole dower, whilst the heirs at law escape with impunity? Could any action be sustained by the widow (in case judgment should finally be rendered against her) against the heirs to compel contribution?

In the trial to the Jury, we observed upon the statute of *New-Hampshire*. We only add, that the Court have that statute and our own before them, and are abundantly competent to give the true construction to both.

*Nathaniel Chipman*, in support of the motion.

There are two questions in this cause:

First. Whether the deed of the *feme covert* is attended with those formalities which make it valid.

Secondly. Whether, if sufficiently formal to convey the land, the *feme covert* shall be holden by the covenants.

If this case depends on common law principles, the deed is not valid, as there is no other mode of common law conveyance by a *feme covert*, than that of fine and recovery. The case then wholly depends on the inquiry, whether there are any statute or statutes regulating conveyances, which operate on this deed to make it valid.

The statute of *New-Hampshire* gives the *baron* and *feme* the power and right of conveying land in the mode pointed out by that statute, to wit, by signing, sealing, acknowledging and delivering, and this without any other act, according to the true construction of the statute, supersedes any other mode of conveyance. This construction is a sound one, and acknowledged by the restricting clause of our statute, which contemplates a mode different from

*Sumner*
v.
*Wentworth*.

*Vermont* Stat. vol. 1. p. 195. s. 13.

8

our own, to wit, such mode as is conformable to the laws of the state, province or kingdom in which the deed is executed.   If this be the sound construction of the laws passed on this subject, this deed must be valid, and the question then arises whether the *feme covert* shall be bound by the covenants in the deed.  The doctrine cited from *Bacon's Abridgment* we consider to be in point.   It is a mistaken idea, that the fine *sur concessit* is confined to a grant for life or years. Judge *Blackstone* says it is *usually* for life or years ; which implies, that it is not always so ; but if I am not mistaken, the case of *Wotton* and *Hale*, quoted in the margin of *Bacon's Abridgment*, shews *that* grant was in *fee*, but the authority is not present.

*Bac. Abr.* vol. 1.
p 496.
2 Med. 684. 703.

It is said to be inequitable to recover damages against the widow in this action, and a doubt is raised whether she could compel contribution among the heirs of her late husband.   This Court will *consider* the case *sub judice*, and not perplex the present motion with the consideration and resolution of possible cases.

We conceive it clear, that the deed was improperly excluded from the Jury, and therefore we are entitled to a trial *de novo*.

Judgment of Court.   New trial not granted.  Motion dismissed with costs.

And now, *on review, January* term, A. D. 1801, the cause went again to the Jury.   Exception was again taken to the deed's being read in evidence. Further argument was heard, and the Court finally

decided, that the deed could not be read to the Jury in support of the plaintiff's declaration.

<div style="text-align:right">Sumner
v.
Wentworth.</div>

Plaintiff nonsuited.

*Nathaniel Chipman, Darius Chipman, Daniel Chipman, Amos Marsh,* and *T. Squires,* for plaintiff.

*S. Hitchcock, S. Miller,* and *C. Smith,* for defendant.